**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JESSICA GONZALEZ, | § | |
| | § | Case No.: 5:21-cv-647 |
| Plaintiff, | § | |
| vs. | § | JURY TRIAL DEMANDED |
| | § | |
| TRIPOLIS ENTERPRISES, INC. D/B/A THE | § | |
| PALACE MEN'S CLUB, STEVE | § | |
| POULAKIS AND THEODORE | § | |
| DIMOPOULOS, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff JESSICA GONZALEZ, ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.   NATURE OF THE ACTION

1.      Plaintiff alleges causes of action against Defendants TRIPOLIS ENTERPRISES, INC. D/B/A THE PALACE MEN'S CLUB, STEVE POULAKIS and THEODORE DIMOPOULOS ("Defendants") for damages resulting from Defendants evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA") and illegally absconding with Plaintiff's tips.

2.      Defendants own and operate a strip Club named THE PALACE MEN'S CLUB. These causes of action arise from Defendants' willful actions while Plaintiff was employed by Defendants from approximately October 1, 2011 through June 1, 2020. Throughout her employment with Defendants, Plaintiff has been denied minimum wage payments and denied

overtime as part of Defendants scheme to classify Plaintiff and other dancers/entertainers as "independent contractors." As the Department of Labor explained in a recent Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employersimproperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees maybe intentionally misclassified as a means to cut costs and avoid compliance with labor laws.[1]

As alleged in more detail below, that is exactly what the Defendant is doing in this case.

3.      Plaintiff worked at Defendants' principal place of business located at 2482 NE Interstate 410 Loop, San Antonio, Tx 78217.

4.      Defendants failed to pay Plaintiff minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

5.      Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half (1 ½) times their regularrate of pay. *See* 29 U.S.C. § 207(a).

6.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

7.      Plaintiff brings a collective action to recover the unpaid overtime compensation and minimum wage owed to her individually and on behalf of all other similarly situated employees, current and former, of Defendants. Members of the Collective Action are hereinafter

---

[1] *See* DOL Admin. Interp. No. 2015-1, available at http://www.dol.gov/whd/workers/Misclassification/AI- 2015_1.pdf

referred to as "FLSA Class Members."

8.    As a result of Defendants' violations, Plaintiff and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.    **PARTIES**

9.    Plaintiff is an individual adult resident of the State of Texas. Furthermore, Plaintiff was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

10.    The FLSA Class Members are all current and former exotic dancers who worked at THE PALACE MEN'S CLUB at any time starting three (3) years before this Complaint was filed, up to the present.

11.    Defendant TRIPOLIS ENTERPRISES, INC. D/B/A THE PALACE MEN'S CLUB (the Club), is a Texas Corporation with its principal place of business at 2482 NE 410 Loop, San Antonio, Tx 78217. At all times mentioned herein, was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). TRIPOLIS ENTERPRISES, INC. D/B/A THE PALACE MEN'S CLUB, may be served via its agent for service of process, Steve Poulakis, 2482 NE 410 Loop, San Antonio, Tx 78217.

12.    Defendant THEODORE DIMOPOULOS ("Dimopoulos") is an owner and president, secretary and director of TRIPOLIS ENTERPRISES, INC. D/B/A THE PALACE MEN'S CLUB and may be served at 5850 Everheart, Corpus Christi, Texas 78413, or wherever he may be found.

13.    Defendant STEVE POULAKIS ("Poulakis") is the sole manager of the Club who executed policies regarding payment to dancers and management of dancers and/or was

responsible for determining whether the Club complied with the FLSA. This defendant may be served at 710 Summer Dawn, San Antonio, Texas 78258, or wherever he may be found.

9.     POULAKIS and DIMOPOULOS acted directly or indirectly on behalf of the Club, and, at all times mentioned herein were an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA. They exerted operational and management control over Defendants, including day to day management. POULAKIS and DIMOPOULOS were and are, frequently present at, owned, directed, controlled and managed the operations at the Club.  POULAKIS and DIMOPOULOS also controlled the nature, pay structure, and employment relationship of Plaintiff and the FLSA Class Members. POULAKIS and DIMOPOULOS had at all times relevant to this lawsuit, the authority to hire and fire employees of the Club, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and  capital expenditures. Additionally, they were responsible for the day-to-day affairs of the Club. In particular, POULAKIS and DIMOPOULOS were responsible for determining whether the Club complied with the FLSA.

10.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their Club engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

11.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

12.     At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed by Defendants as "independent

contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

13.     Plaintiff is informed and believes that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

14.     Plaintiff is informed and believes, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiff in that each of them exercised control over her wage payments and control over her duties.

15.  Plaintiff is informed and believes, and on that basis alleges that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

16.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendant.

### III.     VENUE AND JURSIDICTION

17.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

18.     Venue is proper in this District because all or a substantial portion of the events

forming the basis of this action occurred in this District. Defendants' Club is located in this District and Plaintiff worked in this District.

## IV.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**(AGAINST ALL DEFENDANTS)**

### A.   FACTUAL ALLEGATIONS

19.   Defendant operates an adult-oriented entertainment facility located at 3627 Highway 146, Bacliff, Texas 77518. The picture below depicts the outside of the Club.



20.   At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiff.

21.   At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

22.   At all times relevant to this action, Defendants exercised a great deal of operational

and management control over the subject Club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

23.     Plaintiff began working as a dancer for Defendants in October 2011 through June 1, 2020.

24.     The primary duty of an entertainer is to dance and entertain customers and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

25. Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

26.     Plaintiff worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiff was an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female entertainers.

27.     Defendants did not pay entertainers on an hourly basis.

28.     Defendants exercised significant control over Plaintiff during her shifts, and Defendants required Plaintiff to work an entire shift.

29.     Defendants set prices for all VIP performances.

30.     Defendants charge the dancers a late fee if they do not arrive for a shift on time.

31.     Defendants controlled the means and manner in which Plaintiff could perform.

32.     Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

33.     Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

34.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the

premises. In order to comply with the Club's dress and appearance standards, Plaintiff typically expended approximately thirty (30) minutes of time each shift getting ready for work without being paid any wages for such time getting ready. Defendants did enforce the dress code on the entertainers, to the extent such may have been required as a sexually oriented business by the City of San Antonio and/or State of Texas.

35.     Plaintiff was compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiff whatsoever for any hours worked at their establishment.

36.     Defendants also required Plaintiff to share her tips with Defendants, other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the house mother. Defendants required Plaintiff and other entertainers to tip out the floor men and DJs at least $20.00 each, as well as other non-entertainers who the entertainers interacted with at the Club.

37.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify the Plaintiff about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiff to retain all of her tips and instead required that she divide her tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants loses the right to take a credit toward minimum wage.

38.     Defendants exercised significant control over Plaintiff and all of its entertainers through written and unwritten policies and procedures. Defendants fined entertainers for failing

to comply with management's rules, including late fees added on for every hour an entertainer showed up, changing before getting permission to change at the end of a shift, and a fee to leave early. The Club controlled how the entertainers dressed, including that each entertainer must wear dance heels at all times they were on the floor or stage. Plaintiff, and similarly situated entertainers, had to sign in each shift, check in with the DJ and participate in stage rotation and needed permission to leave at the end of a shift.

39. Defendants required Plaintiff and other entertainers at the Club to pay in order to work. Defendants required entertainers to pay between $20-$60 in house fees to the Club in order to work each shift.

40. Defendants provided and paid for all advertising and marketing effortsundertaken on behalf of Defendants.

41. Defendants paid for the building used by Defendants' maintenance of the facility, the sound system, stages, lights, beverages and inventory used at the facility.

42. Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

43. Defendants' opportunity for profit and loss far exceeded Plaintiff's opportunity for profit and loss from work at the Club.

44. Nude dancing is an integral part of Defendants' operations. Defendants' advertising prominently displays nude dancing for its customers. The Club is well known as a "strip club."

45. Defendants need entertainers to successfully and profitably operate their business model.

46. The position of entertainer requires no managerial skill of others.

47. The position of entertainer requires little other skill or education, formal or

otherwise.

48. The only requirements to become an entertainer at are "physical attributes" and the ability to dance seductively. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require an audition or any try-out process or provide any on-the-job training. Defendants do not require the submission of a resume or any educational background as a required to be hired. If Plaintiff or any other potential entertainer wants to perform, they just need to comply with the legal requires of the city of San Antonio and State of Texas.

49. Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

50. Plaintiff was not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during a seven-plus (7+) hour work shift.

51. Plaintiff was not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and entertain its customers for longer than eight (8) hours per shift.

52. The FLSA Class Members had the same pay structure and were under the same controls as Plaintiff.

53. Plaintiff and FLSA Class Members would work over forty (40) hours in some weeks each worked for Defendants.

54. Defendants have never paid Plaintiff and the FLSA Class Members any amount as wages whatsoever and have instead unlawfully required Plaintiff and FLSA Class Membersto pay them for the privilege of working.

55.    The only source of monies received by Plaintiff (and the class she seeks to represent) relative to her employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiff and the FLSA Class Members wererequired to pay to Defendants.

56.    Although Plaintiff and the FLSA Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violates the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

57.    Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the sole intent to avoid paying her in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

58.    Plaintiff and FLSA Class Members who worked at the Club performed precisely the same job duties - dancing and entertaining at the Club.

59.    Plaintiff and FLSA Class Members who worked at the Club during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

60.    Plaintiff and FLSA Class Members at the Club were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

61.    Plaintiff and FLSA Class Members at  the Club during the applicable limitations period(s) were subject to the same across-the-board, uniformly appliedcorporate policy mandated

by Defendants.

62. Plaintiff and the FLSA Class Members at the Club, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

63. As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainly that numerous other current and former dancers and entertainers who worked at the Club during the applicable limitations period would elect to participate in this action if provided notice of same.

64. Upon information and belief, more than one hundred (100) dancers and entertainers have worked at the Club during the three (3) to five (5) years prior to the filing of this action.

65. Plaintiff is "similarly situated" to the 29 U.S.C. § 216(b) class of persons she seeks to represent and will adequately represent the interests of the class.

66. Plaintiff has hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

67. Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiff or any other entertainer and failed to maintain and furnish wage statements to Plaintiff.

68. Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a. The time of day and day of week on which the employees' work week begins;

b. The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c. An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.     The hours worked each workday and total hours worked each workweek;

f.     The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.     The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.     The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.     The dates, amounts, and nature of the items which make up the total additions and deductions;

j.     The total wages paid each pay period; and

k.     The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

69.     Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and the FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiff and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff seeks to put Defendants on notice that she intends to rely on *Anderson* to provide the extent of her unpaid work.

**B.     INDIVIDUAL LIABILITY UNDER THE FLSA**

70.     In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit stated "[t]he dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

71.     Where an individual exercise "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA and is subject to liability. *Lambert v. Ackerley* 180 F.3d 997 (9th Cir. 1999) Factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records. *Gray*, 673 F.3d at 355 (citing *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010).

72.     Defendant Theodore Dimopoulos is individually liable for failing to pay Plaintiff her wages. The actual identities of other managers and owners are unknown at this time. As stated before, Plaintiff will be amending to include individuals liable pursuant to *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

## V.     COLLECTIVE ACTION ALLEGATIONS

73.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

74.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C.

§ 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

75.     Plaintiff has actual knowledge that FLSA Class Members have also been denied overtime pay for hours worked over forty (40) hours per workweek and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiff worked with other dancers/entertainers at the Club. As such, she has firsthand personal knowledge of the same pay violations throughout Defendants' Club. Furthermore, other exotic dancers/entertainers at Defendants' Club have shared with her similar pay violation experiences as those described in this Complaint.

76.     Other employees similarly situated to Plaintiff work or have worked at the Club but were not paid overtime at the rate of one and one-half (1 ½) their regular rate when those hours exceeded forty (40) hours per workweek. Furthermore, these sameemployees were denied pay at the federally mandated minimum wage rate.

77.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40). Defendants have also denied them full compensation at the federally mandated minimum wage rate.

78.     FLSA Class Members perform or have performed  the same or similar work as the Plaintiff.

79.     FLSA Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

80.     FLSA Class Members regularly work or have worked and did not receive

minimum wage.

81.     FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

82.     As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

83.     Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

84.     The experiences of the Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

85.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

86.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

87.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

88.     Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

89.     As such, Plaintiff brings her FLSA claims as a collective action on behalf of the

following class:

**All of Defendants' current and former exotic dancers/entertainers who worked at THE PALACE MEN'S CLUB located in San Antonio, Texas at any time starting three years before this Complaint was filed.**

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206**

**(By Plaintiff Individually and on Behalf of the Collective Against All Defendants)**

90.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

91.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

92.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

93.    Defendants failed to pay Plaintiff minimum wage in violation of 29 U.S.C. § 206.

94.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff the minimum wage under the FLSA.

95.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

96.    Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated

damages, as well as reasonable attorneys' fees and costs of the action, including interest,pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207

### (By Plaintiff Individually and on Behalf of the Collective Against All Defendants)

97.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

98.     Each Defendant is an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

99.     Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

100.     Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

101.     Defendants failed to pay Plaintiff the applicable overtime wage for each hour in excess of forty (40) during each workweek in which she worked in violation of 29 U.S.C. § 207.

102.     Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff the overtime wage required under the FLSA.

103.     Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were unlawful.

104.     Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages,

as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION

### Unlawful Taking of Tips in Violation of the FLSA, 29 U.S.C. § 203

**(By Plaintiff Individually and on Behalf of the Collective Against All Defendants)**

105. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

106. Plaintiff customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

107. At all relevant times, Defendants were "employer(s)" or "joint employer(s)" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

108. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

109. Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

110. Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

111. Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

112. Defendants required Plaintiff to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customer leaving the tips (such as the Club DJ, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

113. The contribution Defendants required Plaintiff to make after each shift was arbitrary and capricious and distribution was not agreed to by Plaintiff or other dancers; rather, it was imposed upon Plaintiff and other dancers.

114. By requiring Plaintiff to pool her tips with Club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiff in violation of the FLSA.

115. Defendants did not make any effort, let alone a "good faith" effort, to complywith the FLSA as it relates to compensation owed to Plaintiff.

116. At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiff to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed andrefused to pay Plaintiff the proper amount of the tips to which she was entitled.

117. Defendants' willful failure and refusal to pay Plaintiff the tips she earned violates the FLSA.

118. Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

119. As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiff is entitled to damages in the form of all

misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

## FOURTH CAUSE OF ACTION

### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

**(By Plaintiff Individually and on Behalf of the Collective Against All Defendants)**

120.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

121.    Defendants required Plaintiff to pay monetary fees to Defendants and other THE PALACE MEN'S CLUB employees who did not work in positions that are customarilyand regularly tipped, in violation of 29 U.S.C. § 203(m).

122.    Defendants' requirement that Plaintiff pay fees to Defendants and other THE PALACE MEN'S CLUB employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

123.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision withrespect to Plaintiff's wages.

124.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiff are classified as illegal kickbacks.

125.    Plaintiff is entitled to recover from Defendants all fees that Defendants required Plaintiff to pay in order to work at THE PALACE MEN'S CLUB, involving but not limited to house fees and tip sharing.

## FIFTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35

**(By Plaintiff Individually and on Behalf of the Collective Against All Defendants)**

126.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

127. Defendants required Plaintiffs to pay monetary fees to other THE PALACE MEN'S CLUB employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

128. Defendants' requirement that Plaintiffs pay fees to other THE PALACE MEN'S CLUB employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

129. Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision withrespect to Plaintiffs' wages.

130. Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiff to pay other employees in order to work at the Club, involving but not limited to forced tip sharing.

## DEMAND FOR JURY TRIAL

131. Plaintiff hereby demands a trial by jury for all such triable claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following relief:

1. For compensatory damages according to proof at trial of at least $100,000;

2. For special damages according to proof at trial;

3. For restitution of unpaid monies;

4. For attorneys' fees;

5. For costs of suit incurred herein;

6. For statutory penalties;

7. For civil penalties;

8. For pre-judgment interest;

9. For post-judgement interest;

10. For general damages in an amount to be proven at trial;

11. For such other and further relief as the tribunal may deem just and proper.


Dated: July 8, 2021

Respectfully Submitted,
**ELLZEY & ASSOCIATES, PLLC**

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh Montgomery Texas
Bar No. 24052214
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Fax: (888) 276-3455
jarrett@ellzeylaw.com
leigh@ellzeylaw.com

***Attorneys for Plaintiff***